**Dave WILLIAMS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 2-1076A393.

Court of Appeals of Indiana,
Fourth District.

July 22, 1980.

Rehearing Denied Aug. 12, 1980.

Kenneth T. Roberts, Wilson, Coleman & Roberts, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

Dave Williams was convicted of possession of heroin in an amount in excess of ten grams, IC 1971, 35–24.1–4–1(c) (Burns Code Ed.) (now repealed). We affirm. This cause was assigned to this writer in December, 1979.

## I.

Williams objected at trial to the State's final argument. One alleged error is that the prosecutor asserted that Williams' defense was "contrived." Counsel

objected for the reason that this argument attacked counsel's integrity. Counsel did not ask for any specific relief by way of admonition, mistrial, or otherwise. We can reverse only if the defendant was placed in "grave peril." *Marsh v. State*, (1979) Ind., 396 N.E.2d 883, 886; *Washington v. State*, (1979) Ind., 390 N.E.2d 983, 987–88. This comment did not place Williams in grave peril. There is no reversible error.

■ In a second instance the prosecutor referred to the possibility that one of the state's witnesses would potentially be able to take advantage of the "good time" statute. The appellant argues this was error. The prosecutor's reference was improper. *Lyda v. State*, (1979) Ind., 395 N.E.2d 776, 780. Nonetheless there is no reversible error because the court properly admonished the jury and the defendant was not placed in grave peril.

■■ Williams asks us to review other instances of alleged prosecutorial misconduct during final argument. Counsel did not object to these instances. They are waived. *Bell v. State*, (1977) 267 Ind. 1, 366 N.E.2d 1156, 1160. Counsel claims these matters are reviewable nonetheless as "fundamental error." We disagree. This doctrine usually has been successfully advanced only in such matters as the prosecutor commenting on defendant's silence, *Dooley v. State*, (1979) Ind., 393 N.E.2d 154, 156; a failure to read instructions, *Drake v. State*, (1979) Ind., 393 N.E.2d 148, 149; or improper sentence, *Lewandowski v. State*, (1979) Ind., 389 N.E.2d 706, 708. Appellant's failure to object during final argument to the prosecutor's statements that the case is "bizarre"; or that a witness is not credible; or that a witness has lied, does not rise to the level of fundamental error.

## II.

■ Defendant claims that during final argument the prosecutor improperly attacked the defendant's character. The defendant cites the page of the record which supposedly contains his objection to this argument. The citation reveals only that Williams objected to what the prosecutor was saying about some third party. Except for some conclusory statements the defendant has not explained how this harmed him. Williams' brief cites no page of the record containing any objection made by him to a comment by the prosecutor on Williams' character. No error is preserved. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

## III.

Defendant claims that the cumulative effect of the prosecutor's final argument was to comment on the defendant's failure to testify. Without much in the way of additional argument or rationale, defendant merely refers us to his prior arguments on issues I and II, *supra*. We do not find that any of these statements comment on defendant's failure to testify. We furthermore disapprove of any attempt by the defendant to try to present appellate argument simply by a general reference to other portions of his brief.

## IV.

■ The defendant complains in sections IV and V of his brief that the trial court improperly permitted certain rebuttal testimony by police officer Wurz. The facts relevant to this error are as follows. The police searched defendant Williams' apartment after having made a controlled buy. The buy had been executed by James Wilson. Apparently while the search was in progress, Williams mentioned in the presence of officer Wurz that he had bought the drugs for his companion, Diana Wilson. She was the sister of James Wilson.

At trial James Wilson testified for the defense. His testimony was that Wilson himself had secreted his own drugs in Williams' apartment without the knowledge of Williams. When the police had Wilson execute the controlled buy, Wilson testified that he simply removed some of his own drugs from Williams' apartment and turned them over to the police. The net effect of Wilson's testimony was that Williams had no knowledge of the presence of drugs in the apartment.

To rebut this, officer Wurz was recalled to the stand. He thereupon testified that Williams had said he had bought the drugs for Diana Wilson. Williams objected prior to the giving of this testimony on the ground the statement by Williams had not been disclosed by the State during pre-trial discovery. He also apparently objected, secondly, on the basis that the State was impermissibly attempting to "shore up" its case on rebuttal.

We first address the question whether the testimony of Wurz should have been excluded due to the alleged violation of the discovery order. In his motion for discovery the defendant asked for "[a] copy of memoranda, statements, whether oral or written by the defendant and/or of all witnesses who are to be called in prosecution of this cause." The prosecutor answered that "[i]n response to rhetorical paragraph five of defendant's Motion no memoranda exist of any oral or written statements of either the defendant or State's witnesses." The prosecutor's answer put the defendant on notice that the prosecutor believed the defendant had requested only statements which had been reduced to writing.

With this as a background the defense counsel and the prosecutor, Mr. Knapp, explained their respective positions to the trial judge as follows.

"*Mr. Roberts*: Your Honor, at this point in time, if this witness would testify as to any oral statements that have not been previously furnished to me, I would object, because the State is attempting to shore up its case, and I filed a motion with this Court on September 22nd, Judge, wherein I asked for a copy of memorandums, statements, whether they be oral or written, by the Defendant and/or all witnesses who were to be called in the prosecution of this cause, and I have no such statements.

"*Court*: Is it the contention of the parties here that this is a written statement?

"*Mr. Roberts*: Pardon?

"*Court*: Is this a written statement, you're contending there is a copy or a memoranda some place that was not furnished you?

"*Mr. Roberts*: No, sir, in my Motion for Discovery, Your Honor, I asked whether or not there were any oral or written statements made by this Defendant in this cause, and I received a reply from the State of Indiana, I have so many files here, Your Honor, but I have not received any copies of anything reduced to writing as to any oral statements made.

"*Court*: Mr. Knapp?

"*Mr. Knapp*: Your Honor, in Defense counsel's Motion for Discovery dated September 22nd, 1975, in the fifth rhetorical paragraph, I believe Defense counsel has a copy in front of him, a copy of memoranda, statements, whether oral or written by the Defendant and/or all of the witnesses who were to be called in the prosecution of this case. My reply to that, in reading that, I think it's a very ambiguous request, I answered it that in response to rhetorical paragraph five of Defendant's Motion, no memoranda exists of any oral or written statement of any of the State's witnesses, and this is what the State understood Defense counsel's request to be. I was not aware from the way he phrased his Motion that he was requesting that all oral statements made by anybody involved in this case were to be furnished him, and there were no memoranda made of any oral statements made."

Williams' objection was overruled. Officer Wurz then testified to the aforementioned statement by Williams.

The prosecutor and the trial court reasonably believed that the defendant's discovery request was directed only at oral statements which had been reduced to writing. We likewise adopt that view. The defendant created the uncertainty surrounding the discovery request. He must suffer the adverse consequences. We again refer the defendant to the prosecutor's response to the discovery request which explicitly disclosed his interpretation of the request. We find no error in permitting the rebuttal testimony over the objection that the prosecution had violated the discovery request.

We believe that at most the defendant was entitled to a continuance, *see Reid v. State*, (1978) 267 Ind. 555, 372 N.E.2d 1149, 1153–55, but none was requested.

 We now consider whether that testimony should have been excluded on the defendant's objection that the State was impermissibly using the rebuttal to "shore up" its case. When the. defendant complains of improper rebuttal, his remedy is to present his own rebuttal. *Hudson v. State*, (1976) 265 Ind. 302, 354 N.E.2d 164, 169; *Shelby v. State*, (1972) 258 Ind. 439, 281 N.E.2d 885, 887; *Hollowell v. State*, (1971) 256 Ind. 467, 269 N.E.2d 755, 758–59; *Griffith v. State*, (1959) 239 Ind. 321, 157 N.E.2d 191, 192; *Hansen v. State*, (1952) 230 Ind. 635, 106 N.E.2d 226, 229. In this case the defendant had an opportunity to present a rebuttal. Consequently we will not reverse on the ground that the State's rebuttal was improper. *See* cases cited, *supra*.

### V.

 Defendant claims the trial court erred by finding that the police had probable cause to suspect that the defendant was in possession of heroin. This pre-trial probable cause procedure was abolished by *Hardin v. State*, (1976) 265 Ind. 635, 358 N.E.2d 134. Nonetheless *Henry v. State*, (1978) Ind., 379 N.E.2d 132, requires us to pass upon the defendant's claim where, as here, the defendant had raised at the trial level the absence of "entrapment probable cause" prior to the decision in *Hardin v. State*. *Compare Stayton v. State*, (1980) Ind.App., 400 N.E.2d 784, 786. We hold that the trial court properly decided this issue. ˙ The quantum of evidence necessary to support the probable cause to set in motion an entrapment scheme is minimal. For example, it is less than that required to support a search warrant. *Locklayer v. State*, (1974) 162 Ind.App. 64, 317 N.E.2d 868, 872 n. 3. In the case at hand the probable cause to suspect the defendant was supplied by Wilson. Wilson had just been detected by the police to be in violation of his probation. The offer of the police to help out Wilson on this violation in exchange for Wilson's

assistance was pressure upon Wilson to supply truthful information. Consequently Wilson's statement to the police that Williams possessed heroin provided the necessary "entrapment probable cause."

### VI.

 Defendant claims the court erred by refusing to admit his exhibit H. He claims this exhibit, a transcript of the probable cause proceeding, would serve to have impeached the rebuttal testimony of police officer Wurz.

 The defendant argues no more than that the exhibit would be used to impeach Wurz. He does not elaborate upon this. The defendant offers no explanation of the manner or method in which the exhibit could have been used to impeach Wurz. The defendant has failed to muster a sufficient appellate argument. We will not permit a conviction to be overthrown upon the unsupported argument that impeaching evidence was excluded. *See* Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). We also note that the admission of rebuttal evidence is in the court's discretion. *Teague v. State*, (1978) Ind., 379 N.E.2d 418, 427. There is no error.

### VII.

 The defendant claims error on the basis of communications between the bailiff and the jury. The jury asked to rehear certain testimony. Both counsel for defendant and the State agreed that this should not be done. The defendant now claims that the bailiff had an "extended dialogue" with the jury about this matter. The argument in brief (three· sentences) sheds no light on the nature of this "extended dialogue." No error is presented for review. AR. 8.3(A)(7).

### VIII.

 Defendant claims the evidence was insufficient. There was abundant evidence that heroin was found in defendant's apartment. Furthermore, there was evidence from which the jury could infer that defendant Williams knew of the presence of

the drug. This evidence was the testimony of officer Wurz in which he recounted the defendant's statement that the defendant was keeping the drug for his companion, Diana Wilson. The evidence was sufficient.

## IX.

The defendant complains that the court erred by overruling his motion to correct errors without first having given him a hearing thereon. None was required. *Keys v. State*, (1979) Ind., 390 N.E.2d 148, 151. Defendant also complains that the trial court erred by overruling his motion without first having received counter-affidavits from the State. We fail to see how this prejudiced defendant, or that he has any standing to raise this as error.

Affirmed.[1]

CHIPMAN, J., concurs.

MILLER, P. J., dissents with opinion.

MILLER, Presiding Judge, dissenting.

I dissent.

Defendant Williams filed his Demand for Discovery which contained the following language:

Comes now Defendant, by counsel, and pursuant to notice to the prosecutor, damand [sic] the following:

. . . . .

5. A copy of memoranda, statements, whether oral or written by the defendant and/or of all witnesses who are to be called in prosecution of this cause;

The trial court granted the request.

During the rebuttal stage of the trial, one of the arresting officers, Officer Wurz, was permitted to testify over proper objection that Williams, when arrested and after receiving his *Miranda* rights, stated he had purchased the drugs for Diana Wilson. This statement had not been furnished the defendant.

In *State ex rel. Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d 433, our Supreme Court explained the nature and purpose of discovery proceedings as follows:

"The object of a trial is the discovery of the truth. A trial judge has the responsibility to direct the trial in a manner which facilitates the ascertainment of that truth. The power to order discovery is 'grounded in the inherent power of the trial court to guide and control the proceedings'. *Johns v. State*, (1968) 251 Ind. 172, 240 N.E.2d 60, 64. . . . Nevertheless, criminal discovery is designed to improve the efficiency of the criminal justice system. The idea of a trial as a sport or game is not only a reflection on the judicial process, but it is wasteful of human intelligence and technique. . ."

262 Ind. at 423; 317 N.E.2d at 435.

"Persons working under these rules and informed as to their operations state publicly that full disclosure results in the eliminations of many trials since each side is well-informed as to its position and may look realistically at the probable results of a trial. 56 Judicature 279 (February, 1973). . . ."

262 Ind. at 425; 317 N.E.2d at 436.

In interpreting the meaning of the defendant's discovery request, this Court should first examine the language in question to determine if its meaning is clear. Defendant requested "[a] copy of memoranda, statements, whether oral or written by the defendant . . .." To me, this language clearly requests the State to furnish Williams his "oral" statements. The request does *not* read, as suggested in the majority opinion, "[a] copy of memoranda *of* statements, whether oral or written by the defendant." If, on the other hand, the language requires construction by this Court, which I believe unnecessary, we must do so in light of the principles enunciated in *State ex rel. Keller, supra*. Thus, to construe the questioned language as not requiring the State to furnish oral statements would deprive the defendant of full

---

1. The record of this cause contains several editorial comments in lieu of marginal notations. We do not want this practice to continue, *see Irwin v. State*, (1978) Ind.App., 383 N.E.2d 1086, 1087, n. 1, and we may dismiss the appeal for failure to make appropriate marginal notations, *State ex rel. Spelde v. Minker*, (1963) 244 Ind. 421, 193 N.E.2d 365.

disclosure, impede "the efficiency of the criminal justice system" and relegate the discovery procedure to the status of "a sport or game." Further, a confession or admission by the defendant is, practically speaking, the most damaging evidence against him. Revelation by the State of such confession or admission contributes substantially to the elimination of criminal trials and, thereby, enables our criminal courts to act more efficiently.

Our Supreme Court has recognized two remedies when the State violates the trial court's order for discovery.

> "Exclusion is the proper remedy when the State's action is so misleading or demonstrates such bad faith that the only way to avoid a denial of fair trial to the defendant is to exclude the evidence. Absent such circumstances, a continuance is the most appropriate remedy. *Reid v. State*, (1978) Ind., 372 N.E.2d 1149."

*O'Connor v. State*, (1980) Ind., 399 N.E.2d 364, 366.

The majority states the officer's testimony was offered to "rebut" evidence presented by the defendant. However, inculpatory statements by a defendant are properly a part of the State's case in chief, not rebuttal. Wurz testified that Williams was afforded his *Miranda* rights and the voluntariness of the alleged statement was not challenged.[1]

The majority cites *Reid v. State*, (1978) Ind., 372 N.E.2d 1149 as support for its conclusion "that at most the defendant was entitled to a continuance . . . ." I believe the facts in *Reid* are distinguishable from those now before us. In that case, an alibi witness was impeached by testimony of a police officer after a proper foundation had been laid during her testimony. Her contradictory statement to the police had been improperly withheld by the prosecution. The Court determined a continuance would have afforded the defendant an opportunity to investigate and evaluate the officer's credibility as well as the possibility of an error on his part. Additionally, and significantly, the Court stated no error was committed because the alibi witness had been cross-examined concerning her conversation with the officer and, therefore, his subsequent appearance as a rebuttal witness could not have surprised the defendant. Yet, the defendant made no objection to the officer's testimony and cross-examined him at length. Thus, the defendant permitted evidence to go into the record and was not entitled to have it stricken when he found it unfavorable. Here, the testimony came as a complete surprise to defense counsel.

I note further that the informant used by the police to make the initial "buy" which enabled them to obtain a search warrant for Williams' apartment was a drug user and was acting under some coercion by the police to assist them in making their drug cases or suffer prosecution himself. He had access to the apartment of Williams and his testimony to the effect that the drugs discovered in the apartment were his and not the defendant's seriously jeopardized the State's case.

After viewing all the circumstances surrounding the introduction of the "rebuttal" evidence,[2] it is my opinion the trial court should have excluded the officer's testimony. It is apparent from the record that the deputy prosecutor was aware of the existence of Williams' statement throughout the case. Indeed, during closing argument, he stated:

> Now the State can try their case any way they want to, with the type of defense

---

1. A statement held inadmissible as substantive evidence because of a violation of *Miranda* may nevertheless be used to impeach a defendant's credibility if the statement is otherwise found to be trustworthy. *Harris v. New York*, (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1. Since Williams did not testify, his statement obviously could not be used for impeachment purposes.

2. A prosecutor, by withholding significant evidence from his case in chief, does, in fact, jeopardize the prosecution. The trial court, in its discretion, could exclude such evidence as not proper rebuttal. *Hollowell v. State*, (1971) 256 Ind. 467, 269 N.E.2d 755, 758; *Griffith v. State*, (1959) 239 Ind. 321, 157 N.E.2d 191, 192. In addition, withholding such evidence from the case in chief would indeed be a poor tactic if the defendant rested without presenting evi-

that has been erected here, it's significant that one thin piece of evidence be paramount and that it be brought out last, because I wanted you to check the contradictions in the defense.

Since the prosecutor could have introduced the officer's statement in his case in chief and to do so would in no way have materially affected the totality of the evidence against the defendant, I can only conclude the evidence was withheld to mislead the defendant and disrupt the presentation of his case. Defense counsel's inability to address this damaging evidence in opening statement and to conduct his defense during the trial in anticipation of its later admission, in my opinion, substantially prejudiced Williams' defense. In *Johns v. State, supra,* our Supreme Court held that it is fundamentally a denial of due process as guaranteed by the Fifth and Fourteenth Amendments to lead a defendant to believe he has been afforded the right of discovery and then permit the State, in violation of a discovery order, to present surprise witnesses whose testimony substantially adds to the weight of the State's case. Here, the State was conducting the trial as more of a game rather than an orderly hearing. It sought not to rely solely on the evidence against the defendant but to gain advantage by the impact of surprise.

Finally, appellate courts should view with alarm the practice by investigators and prosecutors who, by not reducing recollections of the defendant's statement to writing, seek the advantage of surprise at trial and thereby frustrate the very purpose of criminal discovery. *United States v. Lewis,* (D.C.Cir. 1975) 511 F.2d 798, 802. *See also* ABA Standards, Discovery and Procedure Before Trial § 2.1(a)(ii) (Approved Draft, 1970).

This writer is aware of the requirement of competent police agencies that investigators promptly submit written reports of their investigations including, of course, reports of such significant evidence as confessions. It is inconceivable that a police in-

vestigative agency could properly function if its investigators kept evidence of their numerous cases "in their heads" subject to recall a year or more later at trial. It is also regrettable when, as here, a criminal trial occurs fourteen months after the arrest, the prosecution's case appears to be weak and the officer "recalls" a confession which, in fact, rehabilitates the prosecution's case. See my concurring opinion in *Fox v. State,* (1979) Ind.App., 384 N.E.2d 1159, beginning at page 1171 where two of the most damaging pieces of evidence against the defendants, including an admission allegedly made by one at the time of arrest, "surfaced" at the trial for the first time more than a year after the arrests.

In my opinion Williams' alleged oral statement was within the scope of the discovery order and, under the facts of this case, the trial judge erred by permitting, in violation of his own order, the State's introduction of Williams' alleged statement as rebuttal evidence.

dence and the court, again exercising its sound discretionary power, declined to permit the prosecution to reopen its case. *See, Bullock v. State,* (1978) Ind.App., 382 N.E.2d 179.